# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

September 11, 2018

To:      Denise Koester
         UNITED STATES DISTRICT COURT
         Central District of Illinois
         Peoria , IL 61602-0000

|  |  |
|---|---|
| No. 17-1345 | FREDRICK WALKER,<br>Plaintiff - Appellant<br><br>v.<br><br>TIMOTHY PRICE, et al.,<br> Defendants - Appellees |

| Originating Case Information: |
|---|
| District Court No: 1:14-cv-01343-HAB<br>Central District of Illinois<br>District Judge Harold A. Baker |

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

RECORD ON APPEAL STATUS:          No record to be returned

**NOTE TO COUNSEL:**

If any physical and large documentary exhibits have been filed in the above-entitled cause, they are to be withdrawn ten (10) days from the date of this notice. Exhibits not withdrawn during this period

will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Received above mandate and record, if any, from the Clerk, U.S. Court of Appeals for the Seventh Circuit.

**Date:**                                      **Received by:**

September 11, 2018                             s/D. Sjoken

_                           _____            _____

form name: **c7_Mandate**(form ID: **135**)

In the

# United States Court of Appeals

## For the Seventh Circuit

————————————

No. 17-1345

FREDRICK WALKER,

*Plaintiff-Appellant*,

*v.*

TIMOTHY PRICE, et al.,

*Defendants-Appellees*.

————————————

Appeal from the United States District Court for the
Central District of Illinois.
No. 1:14–cv–01343–HAB — **Harold A. Baker**, *Judge*.

————————————

ARGUED MAY 24, 2018 — DECIDED AUGUST 20, 2018

————————————

Before MANION and BARRETT, *Circuit Judges*, and
GETTLEMAN, *District Judge*.[*]

BARRETT, *Circuit Judge*. A litigant in a civil case has neither
a statutory nor a constitutional right to counsel. He can, how-
ever, ask the court to recruit counsel to represent him on a pro
bono basis. When the court receives such a request from an

————————————

[*] Of the Northern District of Illinois, sitting by designation.

2                                                    No. 17-1345

indigent plaintiff, it must determine whether the plaintiff has
made a reasonable attempt to obtain counsel on his own and
whether, given the difficulty of the case, the plaintiff is com-
petent to litigate it himself. *Pruitt v. Mote*, 503 F.3d 647, 649
(7th Cir. 2007) (en banc). If the answer to the first question is
yes and the answer to the second is no, then the court must
seek counsel to represent the plaintiff.

    This case involves the district court's assessment of the
second question. Fredrick Walker, an inmate, brought a civil-
rights suit against several prison officers. Over the course of
the litigation, Walker asked the court six times to recruit a vol-
unteer lawyer to represent him. The court acted within its dis-
cretion when it denied his initial motions. But it abused its
discretion when it denied the sixth. At that point, Walker was
facing not only a jury trial, but a jury trial by videoconference.
That substantially increased the difficulty of his case, despite
the simplicity of his claims. Moreover, the basic competence
that Walker had demonstrated during the pretrial phase did
not necessarily reflect his ability to handle a video trial en-
tirely on his own. Trying a case requires additional skills, and
Walker had managed the pretrial phase with the help of a jail-
house lawyer who had since been transferred to another
prison. Because the landscape had changed at this late stage
of the litigation, the court should have granted Walker's mo-
tion to recruit counsel.

I.

    Fredrick Walker is a prisoner at the Pontiac Correctional
Center, a maximum-security prison in Pontiac, Illinois. On
August 21, 2013, Timothy Price, the prison officer in charge of
delivering the inmates' breakfast, brought Walker his meal.
The parties dispute what happened next.

No. 17-1345                                                                3

By Walker's account, Price tried to give him a breakfast tray that had fallen on the floor. When Walker requested a fresh meal, Price refused. Walker complained loudly, and in response, two other prison officers, Jeffrey Stahl and Glendal French, moved him from his cell to a more restrictive floor. Walker claims that Stahl and French brutally assaulted him during the move, seriously injuring his face and foot. John Hudson and Marlon Minter, two of his fellow inmates, testified that they could see Walker's swollen face as he was escorted to his new cell. According to Walker, his repeated requests for medical care went unanswered until Mark Spencer, a paralegal at Pontiac, finally relayed his request to the medical unit. Walker was prescribed Motrin for his injuries.

The prison officers give a different account. Price does not remember the alleged breakfast tray incident. And Stahl and French claim they moved Walker to a more restrictive cell because he began kicking his cell door. They say that the transfer was uneventful, and prison officers present at the time of the alleged assault testified that neither Stahl nor French used excessive force. All three defendants deny knowing that Walker had asked for medical care.

A year later, with the help of Marlon Minter—a fellow inmate who acted as his "jailhouse lawyer"—Walker filed a pro se complaint in federal district court under 42 U.S.C. § 1983. He alleged that Officers Price, French, and Stahl violated his Eighth Amendment rights by using excessive force, failing to intervene to stop the use of excessive force, and exhibiting deliberate indifference to Walker's need for medical attention. When he filed his complaint, Walker asked the court to recruit a volunteer lawyer to represent him. Walker stated that his own attempts to recruit pro bono counsel had failed and that

he needed volunteer counsel because he had "numerous mental health issues," limited access to the law library, and no money to hire counsel. He also claimed that his reliance on Minter demonstrated his need for representation. The magistrate judge assigned to the case denied Walker's motion because the case was simple and Walker had personal knowledge of the events. In addition, Walker had prior litigation experience, and his complaint reflected both competent writing skills and knowledge of the relevant law and procedure.

After the defendants had answered the complaint, Walker filed a second motion to recruit counsel. Like the first, it was drafted with Minter's help. Walker repeated the reasons identified in his first motion: his limited mental capacity, lack of access to legal resources, and reliance on Minter. He added that his case was legally and factually complex, that it presented nuanced credibility issues, and that his deliberate indifference claim might require expert medical testimony. Walker's motion also included evidence of his cognitive limitations—he noted that he had an IQ of 76 and a grade-school level of comprehension. In response to this new information, the magistrate judge ordered the defendants to file Walker's Adult Basic Education scores. They never did.

A little over two months later, Walker filed his third request for recruited counsel. He complained that the defendants had not responded to his discovery requests. Their failure to comply, he argued, was yet another reason why he needed the court to help him find a lawyer. The magistrate judge denied Walker's second and third motions on the same day. He recognized Walker's "cognitive deficits," but they did

No. 17-1345                                                    5

not change his conclusion that Walker was competent to con-
tinue pro se. He reiterated that Walker's claims were simple
and that his filings had been "relatively well written, demon-
strating knowledge of the law and the relevant facts." And
while he acknowledged Walker's reliance on Minter's help in
drafting his filings, he concluded: "that alone does not neces-
sarily mean Plaintiff is unable to proceed pro se." The magis-
trate judge directed the defendants to respond to Walker's
discovery requests, which they finally did.

Walker filed his fourth request to recruit counsel several
months later. He asked the district judge to reconsider the ear-
lier motions that the magistrate judge had denied. He restated
his earlier points and added more emphasis to the claim that
his dependence on Minter showed his inability to litigate
without assistance. Two days after the motion was filed, the
district judge denied his motion for reconsideration "for the
reasons stated" in the magistrate judge's earlier order deny-
ing Walker's second and third motions to recruit counsel. To
these reasons, the district judge added a list of six earlier pro
se cases filed by Walker as examples of his competence to lit-
igate pro se.

A month later, Walker filed his fifth motion to recruit
counsel. In this one, Walker complained that his earlier argu-
ments were being "overlooked by the court." He underscored
his cognitive limitations and the complexity of his case. In her
response, the judge again agreed with the magistrate judge's
assessment of Walker's ability. She noted that Walker "ap-
pear[ed] competent to proceed pro se" because he had per-
formed well so far, had some prior federal civil litigation ex-
perience, and was litigating straightforward claims. But be-
cause the case was going to trial, the judge said that she would

nonetheless "attempt to recruit pro bono counsel to represent Plaintiff at trial." She warned him, however, that searching for pro bono counsel was "becoming increasingly difficult."

In the summer of 2016, Walker—through his own efforts—found a lawyer willing to represent him pro bono. That representation, however, didn't last long. Citing irreconcilable differences, his lawyer withdrew within minutes of his appointment.

Walker's case was now approaching trial, and the court ordered the parties to submit briefs discussing whether the trial should be held over videoconference. All of the defendants supported holding the trial by videoconference because transporting Walker to the courthouse would be costly and a potential security risk. They noted that Walker was serving a life sentence for murder, aggravated criminal sexual assault with a weapon, and home invasion; on top of that, he had racked up an extensive prison disciplinary record during his incarceration at Pontiac. Walker objected that trying the case by video would impede his access to the court. But given the security risks posed by Walker's "classification as a high escape risk, high aggression, and maximum security level," the court decided to hold the trial by video. The court opined that the simplicity of Walker's claims and the presence of a large video screen would minimize any prejudice to Walker.

A month later, Walker filed his sixth and final motion to recruit counsel. Walker was now preparing his filings on his own, because Minter, his jailhouse lawyer, had been transferred to another prison. As a result, this motion is noticeably less articulate. In support of his request, Walker complained that he was unable to prepare his final pretrial filings because he lacked access to legal materials. According to Walker, "The

No. 17-1345                                                    7

plaintiff's legal material's that he was using to draft his pre-
trial material's was stolen from the plaintiff by pontiac correc-
tional center official's to prevent the plaintiff from proceeding
in his case against the Defendants."

In December 2016, the court denied Walker's final motion
to recruit counsel. In a text order, it stated:

> Plaintiff's motion to continue and motion to ap-
> point counsel is denied. Plaintiff has significant
> litigation experience. His pleadings demon-
> strate that he is competent to proceed pro se, as
> did the Court's observations of him when he ap-
> peared by video conference at several status
> hearings. The claims (excessive force and failure
> to obtain medical treatment) are relatively sim-
> ple. Plaintiff already has personal knowledge of
> many of the facts underlying his claim. On this
> record, Plaintiff appears competent to proceed
> pro se in light of the straightforward nature of
> his claim.

At that same time, in another procedural twist, Walker's case
was transferred to a different judge for trial due to scheduling
conflicts. The record does not reflect whether the new court-
room would also have the benefit of a large video screen for
trial.

The trial began in February of 2017. Walker, the defend-
ants, and the witnesses appeared by video and, in one in-
stance, Minter gave follow-up testimony by phone. The de-
fendants' counsel was with them at the prison. The video trial
suffered from some predictable limitations. At times, the par-
ticipants had difficulty hearing or seeing each other. There

were also occasional hiccups in presenting exhibits and coordinating the examination of witnesses. At the end of the two-day trial, the jury returned a verdict for the defendants on all claims.

Walker, who is represented by recruited counsel on appeal, claims the district court made three errors. First, he argues that the district court's denial of his motions to recruit counsel was an abuse of discretion that prejudiced him. Second, Walker argues the district court abused its discretion in allowing his trial to proceed by videoconference. Finally, Walker argues that the cumulative effect of the court's errors requires that we grant him a new trial.

## II.

Litigants in federal civil cases do not have a constitutional or statutory right to court-appointed counsel. *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007) (en banc). An indigent litigant, however, may ask the court to recruit a volunteer attorney to provide pro bono representation. 28 U.S.C. § 1915(e)(1). Two questions guide a court's discretionary decision whether to recruit counsel: (1) "has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so," and (2) "given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Id.* at 654.

Walker claims the district court erred when it answered "no" to the second *Pruitt* question, because it underestimated the difficulty of his case and overestimated his ability to litigate it. We think that the court acted within its discretion when it denied Walker's initial requests for recruited counsel. But when Walker made his sixth request, he was facing not only a jury trial—rare enough for a pro se litigant—but a trial

No. 17-1345                                                          9

by videoconference. And he had also recently lost the assistance of his jailhouse lawyer, which meant that his prior filings were not necessarily reflective of his competence to proceed alone. These factors changed the calculus, and we agree with Walker that the district court should have granted his last motion to recruit counsel.[1]

We review the district court's denial of a pro se plaintiff's motion to recruit counsel for abuse of discretion. *Id.* at 658. A district court abuses its discretion when "(1) the record contains no evidence upon which the court could have rationally based its decision; (2) the decision is based on an erroneous conclusion of law; (3) the decision is based on clearly erroneous factual findings; or (4) the decision clearly appears arbitrary." *Id.* To this end, we ask "not whether we would have recruited a volunteer lawyer in the circumstances, but whether the district court applied the correct legal standard and reached a reasonable decision based on facts supported by the record." *Id.*

### A.

When it denied Walker's sixth motion to recruit counsel, the district court considered the simplicity of Walker's substantive claims, but not the difficulty of trying them before a

---

[1] We stress that the district court did not have a responsibility to sua sponte re-evaluate whether it should try to recruit counsel for Walker. *Pruitt*, 503 F.3d at 658 ("[T]here is neither a statutory nor a constitutional duty to monitor whether an indigent litigant is competently litigating his claims after a § 1915(e)(1) request has been denied."). The court's duty to revisit the § 1915(e)(1) calculus arose only because Walker filed a motion renewing his request.

jury. The *Pruitt* standard, however, requires the court to ac-
count for both, because both affect "the difficulty of the case."
*Pruitt*, 503 F.3d at 655 ("The question is whether the plaintiff
appears competent to litigate his own claims, given their de-
gree of difficulty, and this includes the tasks that normally at-
tend litigation."). And while Walker's claims were straightfor-
ward, conducting a trial by videoconference was not.

We have emphasized that the assistance of counsel be-
comes increasingly important as litigation enters its later
stages. *Perez v. Fenoglio*, 792 F.3d 768, 785 (7th Cir. 2015) ("Tak-
ing depositions, conducting witness examinations, applying
the rules of evidence, and making opening statements are be-
yond the ability of most pro se litigants to successfully carry
out."); *see also Miller v. Campanella*, 794 F.3d 878, 880 (7th Cir.
2015); *James v. Eli*, 889 F.3d 320, 327 (7th Cir. 2018). And when
Walker filed his sixth motion to recruit counsel, he was facing
an event that most civil litigants do not: a jury trial. Even if his
earlier filings had passed muster, trying a case is more diffi-
cult than drafting minimally coherent documents. *Perez*, 792
F.3d at 785 ("District courts abuse their discretion where they
fail to consider the complexities of advanced-stage litigation
activities and whether a litigant is capable of handling
them."). Trial involves conducting voir dire, delivering open-
ing and closing statements, examining witnesses, and follow-
ing the rules of evidence. These are all complicated tasks.

And Walker faced an additional hurdle: his case didn't
simply go to trial; it went to trial over videoconference. When
the court denied Walker's sixth motion, it had already de-
cided to hold the trial by video. That meant that the judge and
jury would be together in one room, and the parties, lawyers,
and witnesses would appear on screen. Walker would have to

No. 17-1345                                                         11

stay on track despite inevitable technological hiccups. More-
over, a video trial would make it harder to effectively try a
case that rested almost exclusively on credibility issues, be-
cause Walker would have to compensate for the loss of the
physical presence of the parties, the witnesses, the jurors, and
the judge. Among other things, he would have to convince the
jurors to believe him, and not the defendants, even though
screens would limit their ability to observe body language.

In evaluating the difficulty of the case, the court repeatedly
stressed the simplicity of Walker's claims. To be sure,
Walker's claims were uncomplicated, but two factors com-
bined to make the case difficult: it went to trial and he had to
try it from behind a camera. By failing to adequately account
for these factors, the district court abused its discretion. *See
James*, 889 F.3d at 327 ("[W]e have recognized that certain cir-
cumstances demand particular judicial consideration.").

We pause to add one final note regarding the complexity
of Walker's case as it relates to the *Pruitt* analysis. In Walker's
view, the court should have recruited counsel for him after his
first motion, largely because his claims involve medical exper-
tise and state-of-mind issues. Both of these arguments find
some support in our case law. *Perez*, 792 F.3d at 784 (observing
that it may be best to recruit counsel when the plaintiff "al-
leges an objectively serious medical condition"); *Bracey v.
Grondin*, 712 F.3d 1012, 1017 (7th Cir. 2013) (observing that
state-of-mind claims heighten the complexity of a case); *San-
tiago v. Walls*, 599 F.3d 749, 761 (7th Cir. 2010) (noting that
state-of-mind claims are often difficult for pro se plaintiffs).
But "we have resisted laying down categorical rules regard-
ing recruitment of counsel in particular types of cases." *Pruitt*,
503 F.3d at 656. Doing so risks "finding, as a practical matter,

12                                        No. 17-1345

a presumptive right to counsel in some categories of cases"
even though we have "consistently denied that such a right,
or even a presumption, exists." *McCaa v Hamilton*, 893 F.3d
1027, 1037 (7th Cir. 2018) (Hamilton, J., concurring).

Accepting Walker's argument would mean accepting "as
a practical matter, a presumptive right to counsel in some cat-
egories of cases." And while our precedent requires generos-
ity in considering requests for recruited counsel, it does not
go as far as Walker proposes. The district court correctly noted
that none of his claims was particularly complex; each turned
simply on which witnesses were to be believed. And while it
is true that medical claims often require nuanced expert testi-
mony about the standard of care, Walker's claim did not. He
argued that prison officers refused to respond to his requests
for medical care, not that the care he received was substand-
ard. *See Henderson v. Ghosh*, 755 F.3d 559, 566 (7th Cir. 2014).
Such a claim is not categorically beyond the capacity of a pro
se plaintiff. The difficulty in Walker's case flowed not from the
substance of his claims, but from its procedural posture: the
video trial introduced complexity that had not been there be-
fore. That is the factor on which our decision turns.

B.

The second question from *Pruitt* directs the district court
to examine not only the difficulty of the case, but the pro se
plaintiff's competency to litigate that particular case himself.
*Pruitt*, 503 F.3d at 654. Because this inquiry is "intertwined"
with analyzing the difficulty of the case, *id.*, the district court's
flawed application of the proper legal standard to that aspect
of the inquiry spills over to the analysis of Walker's capacity
to litigate his videoconference trial. There are "no fixed re-
quirements" for determining Walker's capability to litigate

No. 17-1345                                                        13

his own case, but we consider his "literacy, communication skills, education level, and litigation experience" as well as any available evidence of his "intellectual capacity and psychological history" as these relate to litigating his case. *Id.* at 655.

The court acknowledged Walker's mental and psychological limitations, but it did not consider how they would handicap his performance during the trial, as opposed to the pretrial phase. Walker has an elementary-level education and an IQ of only 76. On top of this, Walker has a history of mental and psychological health issues. And although the court asked the defendants to submit Walker's Adult Basic Education scores to the court after Walker's second request to recruit counsel, the defendants never complied. Not every cognitive limitation will require the district court to recruit a lawyer, but the court should have considered how Walker's mental health history would affect his ability to think on his feet at trial. Walker may have been capable of writing intelligible documents, but those do not require a quick, oral response in front of a jury.

Walker's prior litigation experience, while relevant, did not include the performance of the tasks most relevant here: examination of witnesses, introduction of evidence, and the delivery of opening and closing arguments to a jury. To be sure, this case is not Walker's first trip to federal court, and the district court was right to account for the fact that Walker had previously filed six other pro se civil cases. But that litigation experience bears on his ability to identify relevant legal arguments and facts, and much more is required of a litigant who must fully develop and present his case in (or virtually in) a courtroom.

In finding Walker competent to litigate this case on his own, the court relied on his performance during the pretrial phase of the litigation. Like Walker's prior litigation experience, his pretrial performance did not necessarily reflect his ability to handle a trial. More importantly, however, it did not reflect what he could do on his own. From the beginning, Walker relied heavily on Minter to operate as his jailhouse lawyer. In fact, in the course of denying one of Walker's earlier motions, the court rejected Walker's argument that his dependence on Minter demonstrated his need for recruited counsel. By the time Walker filed his sixth motion to recruit counsel, however, his case was headed to trial and Minter had been transferred to another prison. At this point, the court needed to evaluate Walker's capacity independent of any unofficial or jailhouse assistance he may have received. *See McCaa*, 893 F.3d at 1033 (When a litigant's "competency may not have been entirely his own … courts must 'specifically examine[]' a plaintiff's 'personal ability to litigate the case, versus the ability of the "jailhouse lawyer"' who assisted the plaintiff." (quoting *Dewitt v. Corizon, Inc.*, 760 F.3d 654, 658 (7th Cir. 2014)). Yet in denying Walker's sixth motion to recruit counsel, the court cited the quality of the filings Walker had submitted with Minter's help. It is noteworthy that Walker's sixth motion for recruited counsel—the first submitted without Minter's help—was substantially less articulate than the prior filings on which the court relied. That itself indicated that the earlier work in the case was an imperfect measure of Walker's capacity.

Finally, the court took Walker's appearance by video at pretrial status hearings as evidence that Walker could handle a trial by videoconference. The pretrial status hearings, however, differed significantly from a trial. They involved only a

No. 17-1345                                                    15

few people: the judge, the defendants' lawyers, and Walker. They did not require Walker to prepare opening and closing statements, develop any direct lines of questioning, or cross-examine witnesses. And they dealt largely with administrative matters rather than substance. While Walker's performance at these hearings was relevant data about his ability to handle himself, the court placed too much weight on it.

### C.

The district court erred when it denied Walker's sixth request that it recruit counsel, but Walker is only entitled to relief if that error prejudiced him. To show prejudice, a litigant need only show that "there is a *reasonable likelihood* that the presence of counsel would have made a difference in the outcome of the litigation." *Pruitt*, 503 F.3d at 659.

In *Pruitt*, we found that the pro se plaintiff's "inept trial performance" showed that counsel would have helped him make his case to the jury. *Id.* at 661. We held that "[a]t the very least, counsel could have helped Pruitt present his story to the jury in a more organized and coherent manner." *Id.* While Walker's opening statement and his own testimony were fairly easy to follow, he ran into difficulty when he examined and cross-examined witnesses. The other participants periodically had difficulty hearing him. The questions he asked often made little sense; he had trouble laying foundations for exhibits he wanted to enter into evidence; and he struggled to draw out inconsistencies in the testimony of the defendants and their witnesses. At one point, Walker objected that one witness was coaching another. The judge replied, "I can't see or hear that, so I don't know what's going on." The witness denied being coached, and Walker had no lawyer to press the point.

16                                                          No. 17-1345

Like the case in *Pruitt*, Walker's case was a swearing con-
test. *Id.* at 660–61. His task was to highlight the strength of his
own account and impeach the credibility of the defendants.
His effort was incoherent, and at the very least, the presence
of counsel would have ensured a fair presentation of Walker's
case to the jury. We therefore conclude that Walker was prej-
udiced by the district court's refusal to try to recruit counsel
for him.[2]

                                   III.

Because it might arise on remand, we briefly address
Walker's argument that the district court erred by requiring
him to proceed by video rather than in open court. In *Thornton
v. Snyder*, we held that a district court has discretion to hold a
video trial when a plaintiff presents serious security concerns.
428 F.3d 690, 697–98 (7th Cir. 2005). Given our conclusion that
the court should have recruited counsel for Walker, we need
not decide whether it abused its discretion in proceeding by
videoconference. But we do not want to leave the impression
that we are second-guessing the court's decision to do so. The
error here was the court's failure to account for Walker's ca-
pacity to conduct a video trial in considering his sixth motion

---

[2] We need not address what would have happened if the district court
had tried and failed to recruit counsel for Walker. The district court's error
was that it abused its discretion when it denied Walker's sixth motion to
recruit counsel. Walker was entitled to the district court's assistance in
finding a lawyer, but he had no constitutional or statutory right to have
representation in his civil case. *Pruitt*, 503 F.3d at 649; *see also Wilborn v.
Ealey*, 881 F.3d 998, 1008 (7th Cir. 2018) (noting that § 1915(e)(1) does not
"mean that the court has an indefinite commitment to search until a vol-
unteer is found").

No. 17-1345                                                  17

to recruit counsel. On remand, the court should not under-
stand our opinion to dictate whether it conducts any new trial
live or by videoconference.

***

We VACATE the judgment and REMAND this case for
further proceedings consistent with this opinion.

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

**CERTIFIED COPY**

**FINAL JUDGMENT**

A True Copy
Teste:

August 20, 2018

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

Before:
DANIEL A. MANION, Circuit Judge
AMY C. BARRETT, Circuit Judge
ROBERT W. GETTLEMAN, District Court Judge*

|              | FREDRICK WALKER,<br>Plaintiff - Appellant |
|--------------|------------------------------------------|
| No. 17-1345  | v.                                       |
|              | TIMOTHY PRICE, et al.,<br> Defendants - Appellees |

| **Originating Case Information:** |
|-----------------------------------|
| District Court No: 1:14-cv-01343-HAB<br>Central District of Illinois<br>District Judge Harold A. Baker |

We **VACATE** the judgment and **REMAND** this case for further proceedings consistent with this opinion. The above is in accordance with the decision of this court entered on this date. Each side shall bear their own costs.

* Of the Northern District of Illinois, sitting by designation.

form name: **c7_FinalJudgment**(form ID: **132**)